# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 878 | **DATE** | 11/17/2003 |
| **CASE TITLE** | Snyder, et al v. Thomas and Betts Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Snyder, et al, Motion to Dismiss Counts II and III of T&B's amended counterclaim; and Motion by T&B for Judgment on the Pleadings (docs. # 85 and 87)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] . Enter memorandum opinion and order. For the attached reasons, Thomas and Betts' Motion for Judgment on the Pleadings is GRANTED, and the Snyders et al Motion to Dismiss is GRANTED in part, and DENIED in part.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | NOV 18 2003 date docketed |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| | | date mailed notice |
| JHC courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number: 98

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

NOV 1 8 2003

| | |
|---|---|
| RICHARD C. SNYDER, as Trustee of the Richard C. Snyder Trust No. 1 dated October 4, 1996; LISA J. BECKER, individually and as Trustee of the Lisa J. Becker Trust No. 1 dated October 1, 1997; DORIS I. MCHALE, as Trustee of the Doris I. McHale Revocable Trust No. 1 dated October 1, 1997; JOHN R. MCHALE, individually and as Trustee of the John R. McHale Trust No. 1 dated February 27, 1996; KELLY A. ROBERTS; MEGAN L. SNYDER, individually and as Trustee of the Megan L. Snyder Trust No. 1 dated May 20, 1996; MICHAEL C. SNYDER; AND MOLLY L. SNYDER, individually and as Trustee of the Molly L. Snyder Trust No. 1 dated May 20, 1996,<br><br>Plaintiffs,<br><br>v.<br><br>THOMAS AND BETTS CORPORATION, a Tennessee Corporation,<br><br>Defendant. | No. 00 C 878<br><br>Judge William J. Hibbler<br><br>Magistrate Judge Denlow |

## <u>MEMORANDUM OPINION AND ORDER</u>

**I.  Background**

Plaintiffs/Counter-defendants (Snyders) filed a Motion to Dismiss Counts II and III of Defendant/Counter-plaintiff Thomas and Betts Corporation's (T&B's) Amended Counterclaim, and in response, T&B filed a Motion for Judgment on the Pleadings with Respect to Plaintiffs' Fraud-Based Claims Relating To The "1998 Restructuring." Both motions argue that the contract language of the Acquisition Agreement (Agreement) entered into by the parties mandates the dismissal of



certain claims of the opposing party.

T&B and the Snyders entered into the Acquisition Agreement on July 2, 1998, whereby T&B agreed to purchase all of the stock of Telecommunications Devices, Inc. (TDI) from the Snyders, who were the owners of record of all of the issued and outstanding capital stock of TDI. As consideration for the purchase, T&B gave the Snyders a number of shares of T&B common stock, equal to approximately $74 million. The parties agree that the Acquisition Agreement and accompanying Escrow Agreement constitute a valid and enforceable contract.

According to section 5.7 of the Agreement, at closing T&B would place 151,987 shares of the common stock it gave for consideration, having a value of $7.4 million, in escrow to be held by an escrow agent and either released to the Snyders or surrendered to T&B. The escrowed shares were to be applied to indemnify T&B against any losses specified in section 7.2 and section 7.3 of the Agreement or released from escrow to the Snyders as soon as practicable. Article VII of the Agreement provides for indemnification if the Snyders or T&B breach their representations and warranties concerning the transaction or their respective companies, as listed in Articles III and IV of the Agreement. Section 7.1 states that the representations and warranties shall survive the closing for one year after the closing date, except that representations and warranties in Sections 3.1 and 3.2 shall survive indefinitely. Sections 7.2 and 7.3 explain that for the representations and warranties with the one-year survival period, the parties must make a written claim for indemnification during the one year period following the signing of the Agreement. The party making a claim for indemnification also had to direct the escrow agent to deliver the appropriate number of escrowed shares in satisfaction of the indemnification obligation. The indemnifying party had 30 days to dispute the return of the escrowed shares.

Twenty-eight days after the Agreement was signed, on July 30, 1998, T&B filed a Form 8-K publicly announcing a corporate restructuring of its business operations.[1] This announcement was to form the basis for the Snyders' fraud and breach of contract claims against T&B. On June 29, 1999, T&B sent written notice under Section 7.2 of the claim that would form the basis of its breach of contract and fraud claims against the Snyders: that the Snyders had breached certain of their representations, warranties and covenants in Sections 4.5 and 4.9 of the Agreement by underpaying payroll withholding taxes due to the United Kingdom Inland Revenue. T&B requested indemnification from the escrow fund in the amount of $2,722,685, and instructed the escrow agent to withhold 53,600.75 shares in the escrow fund. The Snyders disputed T&B's entitlement to indemnification, and the 53,600.75 shares have been kept in escrow. The remaining 97,587 shares were released to the Snyders by the escrow agent.

On January 10, 2000, the Snyders filed the complaint in this case, seeking a declaratory judgment that they are entitled to the remaining 53,600.75 shares in escrow and claiming that T&B breached the Agreement and committed various forms of fraud when T&B announced their corporate restructuring 28 days after the Agreement was signed. In their complaint, the Snyders argue that T&B breached its representations and warranties in Section 3.2(g) of the Agreement by failing to disclose the corporate restructuring. In Section 3.2(g), T&B represented that "[s]ince April 5, 1998, there has been no material adverse change in Buyer's business and Buyer has disclosed to Sellers any material adverse information related to Buyer." The Snyders argue that the corporate restructuring had a material adverse effect upon the value of the stock T&B paid to the Snyders as consideration

---

[1] A Form 8-K is a document required by the SEC to announce certain significant changes in a public company, such as a merger or acquisition, a name or address change, bankruptcy, change of auditors, or any other information which a potential investor ought to know about.

3

under the Acquisition Agreement because it led to a $90 to $110 million charge to T&B's earnings. The Snyders claim that T&B knew of this material adverse change prior to closing. The Snyders also allege that T&B committed common law fraud and violated the Consumer Fraud Act by failing to inform the Snyders of these material facts prior to the execution of the Acquisition Agreement

On April 30, 2001, the Snyders amended their complaint after T&B filed its annual report on Form 10-K on March 29, 2001. T&B's Form 10-K restated the company's financial statements for the fiscal years 1996, 1997, 1998, 1999, and 2000, and stated that previously issued financial statements should not be relied upon. In their amended complaint, the Snyders added to their claim that T&B breached their representations in Section 3.2(g) of the Agreement, because in Section 3.2(g), T&B represented that "[n]one of the SEC Reports, including any financial statements or schedules included or incorporated by reference therein, contained any untrue statement or omitted to state a material fact required to be stated or incorporated by reference therein or necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading." Similarly, the Snyders added to their claims of fraud that T&B intentionally misstated information in financial statements filed with the SEC and misrepresented T&B's financial condition prior to closing in order to induce the Snyders to proceed with the Agreement.

On October 1, 2002, T&B filed a counterclaim for declaratory judgment, seeking a declaration that T&B was entitled to the remaining 53,600.75 shares in escrow, and on May 14, 2003, T&B amended its counterclaim to add a breach of contract and fraud claim against the Snyders. In Count II of the amended counterclaim, T&B claims that the Snyders breached the Acquisition Agreement by representing in Sections 4.5 and 4.9 that the Snyders' financial statements were correct and complete and that the Snyders had no outstanding tax liabilities as of the July 2,

4

1998 closing, when in fact they had unpaid withholding tax liability. As indicated above, T&B initially notified the Snyders of this claim for underpayment of payroll withholding taxes to Inland Revenue on June 30, 1999. At that time, T&B claimed that the total underpayment plus interest and penalties totaled $400,083. In its May 14, 2003, amended counterclaim, however, T&B claims that new information has come to light showing that the Snyders underpaid the withholding taxes by $1,003,086. In Count III of its amended counterclaim, T&B claims that the Snyders also committed fraud because they represented in the Agreement that they had withheld and paid all required taxes when they knew at the time of the Agreement that the Inland Revenue payroll taxes had not been paid as required.

In their motion to dismiss, the Snyders now seek to dismiss Count II of T&B's amended counterclaim on the grounds that T&B is contractually limited to its initial claim upon the shares in escrow, and the Snyders seek to dismiss Count III on the grounds that the fraud claim fails to state a claim upon which relief can be granted, or, in the alternative, that the fraud claim is contractually time-barred. In T&B's motion for judgment on the pleadings, T&B seeks to dismiss the fraud claims in the Snyders' amended complaint on the grounds that they are contractually time-barred.

## II. Applicable Law

In diversity cases, federal courts apply the substantive law of the state where the suit is brought, including the state's choice of law rules. *Heller Int'l Corp. v. Sharp*, 974 F.2d 850, 856 (7th Cir. 1992). Illinois follows the Restatement (Second) of Conflict of Laws in making choice of law decisions. *Midwest Grain Products of Ill. V. Productization, Inc.*, 228 F.3d 784, 787 (7th Cir. 2000). The Restatement refers either to a choice of law provision in the contract at issue or to the place of performance. *Id.* The Illinois Supreme Court has held that "[g]enerally, the parties may validly

5

stipulate as to the applicable law," and "generally, the law applicable to a contract is that which the parties intended, assuming such an intent. When that intent is expressed, it should be followed." *Hofeld v. Nationwide Life Ins. Co.*, 59 Ill. 2d 522, 529, 322 N.E.2d 454, 458 (1975). As to procedural issues, however, federal courts apply federal procedural law. *Midwest Grain*, 228 F.3d at 791.

Neither party has identified which state's substantive law should apply in this case. Section 8.9 of the Acquisition Agreement specifies that Tennessee law governs disputes arising out of the Agreement, and T&B is a Tennessee corporation with its corporate headquarters in Tennessee. Although the parties rely on both Illinois and Tennessee law, "Illinois courts would respect the parties' choice of [] law, and so do we." *H. B. Fuller Co. v. Kinetic Systems, Inc.*, 932 F.2d 681, 685 (7th Cir. 1991) (citing *Hofeld*, 59 Ill. 2d at 529; 322 N.E.2d at 458). Therefore, this Court will apply Tennessee law to the substantive issues in this case.

## III. Legal Standard

Motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) are reviewed under the same standard as motions to dismiss under Rule 12(b). *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). Courts grant a Rule 12(c) or Rule 12(b) motion only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Id.* at 452 (citing *Craigs, Inc. v. General Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir.1993)). For purposes of this inquiry, the Court views the facts in the complaint in the light most favorable to the nonmoving party. *Northern Indiana Gun & Outdoor*, 163 F.3d at 452.

## IV. The Snyders' Motion To Dismiss Count II of T&B's Amended Counterclaim

Count II of T&B's amended counterclaim seeks $1,003,086 in damages for the Snyders' alleged breach of contract based on the Snyders' alleged underpayment of payroll withholding taxes to Inland Revenue. The Snyders argue that Count II should be dismissed because T&B is contractually limited to its initial June 30, 1999, claim upon the shares in escrow for 53,600.75 shares valued at $2,722,685, of which $400,083 was to account for the Snyders' alleged underpayment of payroll withholding taxes. This argument, however, does not go to the validity of T&B's breach of contract claim: the Snyders do not dispute that T&B states a valid claim for breach of contract for at least $400,083. Therefore, the Court will not grant the Snyders' motion to dismiss Count II of T&B's amended counterclaim. In addition, the Court will not limit the amount of damages T&B may claim for the Snyders' alleged breach of contract for the reasons that follow.

The Snyders claim that T&B may not increase their claim upon the shares in escrow because: (1) the Agreement prohibits T&B from seeking indemnification from the escrowed shares already released to the Snyders; and (2) T&B is contractually time-barred from increasing the amount of their claim for damages from the alleged breach of the Snyders' representations in Sections 4.5 and 4.9 of the Agreement. Although the Snyders point to Section 5.7 of the Agreement as prohibiting T&B from seeking further indemnification from the already released escrowed shares, Section 5.7 does not support their claim. The Agreement does not prohibit T&B from seeking indemnification beyond the $2,722,685 set aside in escrow after T&B's initial June 1999 claim, and Section 5.7 does not prohibit T&B from seeking indemnification from the remaining escrowed shares that were released to the Snyders. Section 5.7 only limits the amount of indemnification to the 151,987 shares, valued at $7.4 million, that T&B originally put into escrow when the Agreement was signed. The

Snyders argue that the parties agreed that the escrowed shares were to be T&B's sole and exclusive remedy. Even assuming that is true, however, the Snyders do not have any support for their claim that the parties agreed that the sole and exclusive remedy should be less than the $7.4 million or 151,987 shares originally put in escrow.

The Snyders next argue that T&B is contractually time-barred from increasing the amount of their claim for damages from the alleged breach from $400,083 to $1,003,086. Article VII of the Agreement states that representations and warranties, such as the ones the Snyders made in Sections 4.5 and 4.9, would survive one year from the date of the closing, and the parties must make a written claim for indemnification based on breaches of these representations and warranties within that one year time period. The relevant contractual provision states that in the event the Snyders breach any of their representations and warranties and T&B makes a written claim for indemnification against the Snyders within the applicable survival period, then the Snyders shall indemnify and reimburse T&B "from and against the entirety of any loss [T&B] may suffer through and after the date of the claim for indemnification (but not including any [sic] Loss [T&B] may suffer after the end of the applicable survival period) resulting from, arising out of, relating to, in the nature of, or caused by the breach." Section 7.3.

The parties disagree as to whether Section 7.3 allows T&B to increase the dollar amount of a claim it made within the one-year survival period. The Snyders argue that T&B may not recover the additional $603,003 it seeks in damages in Count II of its counterclaim since T&B only made a claim for $400,083 within the applicable one year time period, on June 30, 1999. T&B counters that it is entitled to recover the entirety of any loss that it suffered from the Snyders' alleged breach of contract. Viewing the facts in the complaint in the light most favorable to T&B, the nonmoving

party, the Court finds that the language of the contract could reasonably be susceptible to either parties' interpretation. *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn.1975). Therefore, the intended meaning of the contract is for the finder of fact to decide. *Tennessee Consol. Coal Co. v. United Mine Workers of Am.*, 416 F.2d 1192, 1198 (6th Cir.1969) (applying Tennessee law). Accordingly, the Snyders' motion to dismiss Count II of T&B's Amended Counterclaim is denied.

V.  **The Snyders' Motion to Dismiss Count III of T&B's Amended Counterclaim For Failure to State a Claim Upon Which Relief May Be Granted.**

In Count III of its amended counterclaim, T&B claims that the Snyders committed fraud because the Snyders represented in the Agreement that they had withheld and paid all required taxes when they knew at the time of the Agreement that the Inland Revenue payroll taxes had not been paid as required. The Snyders argue that this claim fails to state a cause of action, or, in the alternative, that it is barred under the terms of the Agreement.[2]

The Snyders' first argument makes no sense. The Snyders argue that the claim fails to state a cause of action for fraud because the total amount of liability for the alleged fraud, $1,003,086, was not known at the time the Snyders allegedly committed the fraud. This in no way proves that T&B failed to state a claim for fraud because a party who perpetrates a fraud need not know the exact amount of damages that will be caused by his fraud. The elements of fraud in Tennessee are: (1) a false misrepresentation; (2) made knowingly, without belief in its truth, or recklessly; (3) of a material fact; (4) which induces reasonable reliance, and (5) which results in damages. *Ockerman*

---

[2] The Snyders state that T&B added Count III for fraud without leave of the Court to do so; however, the Snyders decline to object to this procedural defect and instead choose to challenge the substantive deficiency of T&B's fraud claim.

*v. May Zima & Co.*, 27 F.3d 1151, 1156 (6th Cir. 1994). The Snyders do not claim that any of these five elements were not met.

The Snyders' next argument is similarly deficient. They argue that T&B's claim for fraud in Count III fails to state a claim upon which relief can be granted because it is merely a dressed-up breach of contract action. The Snyders, however, cite no evidence in support of this claim: they do not argue that T&B's claim does not meet the five elements of common law fraud. The fact that T&B's fraud claim stems from an alleged misrepresentation the Snyders made in the Agreement does not make the fraud claim inactionable. In fact, the Snyders' claims that T&B committed fraud are also based on alleged misrepresentations by T&B in the Agreement.[3]

Next, the Snyders claim, without supporting argument or evidence, that T&B failed to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b). "A plaintiff must, at a minimum, allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent intent of the defendants and the injury resulting from the fraud." *Calipari v. Powertel, Inc.*, 231 F. Supp. 2d 734, 736 (W.D. Tenn. 2002) (citing *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)). T&B, however, did plead fraud with particularity. In its amended counterclaim, T&B alleges that the Snyders committed fraud when they signed the Agreement by misrepresenting that they had withheld and paid all required taxes, when, in fact, they had not. T&B

---

[3]In *Orix Credit Alliance, Inc. v. Taylor Mach. Works, Inc.*, 844 F. Supp. 1271, 1274 (N.D. Ill. 1994), the Snyders' single, cited case, the Court's holding that the plaintiff did not state a cause of action only applied to the issue of promissory fraud. In Orix, the plaintiff failed to state a cause of action because the plaintiff failed to allege that the defendant made a misrepresentation about an intention to act in the future. A claim for common law fraud, by contrast, needs the opposite: a fraudulent statement relating to a past or present fact, not a false promise to do an act in the future. *U.S. for use of Ascher Brothers Co., Inc. v. American Home Assurance Co.*, 98 C 0995, 2003 WL 1338020, at *16 (N.D. Ill. Mar. 18, 2003).

alleges that the Snyders intended for T&B to rely on the false representation, and that the alleged false representation caused them specific monetary damages. These allegations satisfy the requirements of Rule 9(b).

### VI. The Snyders' Motion to Dismiss Count III and T&B's Motion for Judgment on the Pleadings Based On Contractual Time Limitation As To Fraud Actions

The Snyders' next argument is that T&B's fraud claim is barred by Section 7.1 of the Agreement, which provides that any claim that a representation or warranty was made with an intent to defraud must be brought within 30 days after such fraud has been or should have been detected. The Snyders claim, and T&B agrees, that T&B knew of the alleged fraud since at least June 30, 1999, when it first asserted its indemnification claims. T&B admits that its fraud claim should be barred, but argues that the 30 day limit bars the Snyders' fraud-based claims as well.[4]

Section 7.1(iii) of the Agreement states that "any representation or warranty which is made with intent to defraud, [] shall continue in full force and effect thereafter for thirty (30) days after such fraud has been, or should have been, detected." This 30-day limitation was first raised by T&B, in its motion to dismiss the Snyders' complaint, filed on February 18, 2000. T&B argued that the 30-day limit should bar the Snyders' fraud claims. In response to T&B's motion to dismiss, the Snyders' argued that the contractual time limit for bringing fraud-based claims is unreasonable and in violation of Illinois public policy because it is equal to waiving the parties' right to bring any fraud-based claim. At that time, this Court ruled that since the Court must draw all reasonable inferences in favor of the Snyders, the Snyders' claims were sufficient to avoid dismissal.

---

[4]The parties agree that the Snyders' fraud claims -- common law fraud claim and an Illinois Consumer Fraud Act claim -- were brought more than a year after T&B's alleged fraud should have been or was discovered.

11

Now, however, in the Snyders' motion to dismiss, they make no claim that the contractual time limit for bringing fraud based claims is invalid. Instead, they recognize the validity of the contractual limitation provision, arguing that the time limitation applies to T&B's fraud claim but not to their own. As both parties recognize the validity of the provision, Section 7.1(iii) applies to bar the Snyders' fraud-based claims and T&B's fraud-based claim in Count III of its amended counterclaim.[5]

The Snyders' argument that the time limit should apply to T&B's but not the Snyders' fraud claims must fail. First, the contractual time limitation does not distinguish between types of fraud claims, and the Snyders provide no evidence or argument that the parties meant for Section 7.1 to apply differently to different fraud claims. Second, the Snyders' attempt to distinguish the parties' fraud claims is meritless. The nature of the Snyders' and T&B's fraud claims are the same: they are both based on the allegation that the other party made certain warranties or representations in the Agreement which were false at the time they were made.

---

[5]The parties argue extensively about whether the Snyders' claim that the 30 day limitation should be applied to bar T&B's fraud claim amounts to a judicial admission that the time limit is valid. This argument is inapposite as the Snyders never attempt to reassert their earlier claim that the contractual time limit is invalid and merely reiterate that the provision should be applied to T&B's fraud claim.

## VII. Conclusion

Therefore, the Snyders' Motion to Dismiss Counts II and III of T&B's amended counterclaim is DENIED as to Count II, and GRANTED as to Count III. T&B's Motion for Judgment on the Pleadings GRANTED.

IT IS SO ORDERED.

Dated: November 17, 2003

William J. Hibbler, District Judge